OPINION OF THE COURT
Alfred J. Weiner, J.
Support petitions were filed on April 17, 1979, by the Rockland County Department of Social Services (D. S. S.), alleging that the respondents are chargeable with the support of their son, Daniel.
Daniel was placed in the custody of D. S. S. pursuant to the execution of two voluntary placement agreements in accordance with section 384-a of the Social Services Law. The first agreement was executed on May 10, 1977, and was approved by the Family Court on September 2, 1977, pursuant to section 358-a of the Social Services Law. The second agreement, executed on January 25, 1978, was approved on April 3, 1978, by the Family Court, pursuant to section 358-a of the Social Services Law. Daniel remained in placement until July 14, 1978.
D. S. S. subsequently filed these support petitions against the respondents after placement expired, seeking reimbursement for moneys spent on behalf of Daniel while he was in foster care placement.
The respondents, alleging that they are not responsible for the care of Daniel during his period of time in foster care, argue that: (1) placement was by contractual agreement which makes no reference or demand upon the respondents to contribute to the care of the child; (2) there is no specific statutory authority for parental contribution for support in the event of a limited foster care agreement, and (3) even if there is responsibility for support, D. S. S. is guilty of loches, in not bringing a support petition during the time of placement.
The court is, therefore, presented with two issues: (1) Are the respondents liable for the support of their child while the child is in temporary foster care pursuant to a voluntary placement agreement? (2) Does the Family Court have juris *413 diction to enter an order of support where a proceeding is commenced after termination of placement?
Statutory authority exists in the Family Court Act and the Social Services Law, placing responsibility on parents to support their child who is a recipient of public assistance or care. (Family Ct Act, §§ 413, 414, 415.) Section 101 of the Social Services Law not only directs parental responsibility for children under the age of 21, but also directs that such liability may be enforced by appropriate proceedings and actions in a court of competent jurisdiction. Such a proceeding includes a support proceeding initiated in Family Court by a social services official (Family Ct Act, § 422; Social Services Law, § 102).
Respondents contend, as a result of entering into an agreement placing temporary care of their child in D. S. S., which fails to mention parental contribution for support, that the respondents are absolved from any responsibility for such support. The voluntary agreement executed by the petitioner and the respondents merely temporarily transferred the care and custody of Daniel to D. S. S. and did not relinquish the respondents’ support obligation (Social Services Law, § 384-a). Therefore, the respondents are responsibile for Daniel’s support while he was in voluntary foster care.
The next issues concern the jurisdiction of the Family Court to enter a retroactive order of support when a child is no longer in placement. Subdivision (b) of section 234 of the Family Court Act (as added by L 1976, ch 853, § 4, eff July 1, 1976), giving the Family Court jurisdiction to order parents to pay support while their child is in placement, does not state the child must presently be in placement to compel such support. It merely states that "such parent * * * shall pay to the court such sums as will cover in whole or in part the support of such child”. (Family Ct Act, § 234, subd [b].)
Section 415 of the Family Court Act does not state that the child must presently be receiving public assistance or care before rendering support responsibility on the parents. Accordingly, the parental obligation and responsibility survive, even though at the time of the filing of the support petition, the respondents’ child was no longer receiving public assistance or care.
The legislative purpose in enacting section 415 of the Family Court Act and section 101 of the Social Services Law was to hold parents responsible for children in need of, or recipi *414 ents of, public assistance. "These statutes are founded in the idea that a parent should not be free to avoid all financial obligation to his or her child by simply letting that child become a public charge.” (Matter of Darene H. v Patricia S., 90 Misc 2d 558, 559.) Relinquishing temporary care and custody to D. S. S. cannot raise the assumption of relinquishing responsibility to support their child. "There is no question that the Family Court, as now constituted, may grant relief by way of reimbursement for past expenditures.” (Matter of Eagen v Robb, 72 Misc 2d 364, 369.)
Respondents contend that it would be unfair and inequitable for the court to order reimbursement after the child has been returned, under the doctrine of loches. The most recent voluntary agreement expired on July 14, 1978, when Daniel reached the age of 18. A delay of approximately nine months from the expiration of the agreement to the filing of the instant support petitions does not render this proceeding untimely. However, certain circumstances may exist in other situations when a time delay will be considered highly unfair and inequitable, thereby rendering the proceeding invalid.
Therefore, the court holds that it has jurisdiction over this proceeding and that the respondents are liable for the support of Daniel, during the period of time he was in voluntary placement.
The clerk of the court is directed to schedule this matter for a hearing to determine the amount of the respondents’ obligation based on their financial ability.